```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF TENNESSEE
                     WESTERN DIVISION
```

| | | |
|---|---|---|
| **TIMOTHY C. WATSON,** | ) | |
| | ) | |
|     **Plaintiff,** | ) | |
| | ) | |
| v. | ) | No. 08-2718 |
| | ) | |
| **THE CITY OF DYERSBURG, MASON "JOE" McDOWELL, CHRISTOPHER CLEMMONS, RUSSELL BURROWS, and STERLING WRIGHT,** | ) ) ) ) | |
| | ) | |
|     **Defendants.** | ) ) | |

**ORDER DENYING DEFENDANTS' MOTION TO SEVER**

Before the Court is the November 9, 2009, Motion to Sever filed by Defendants the City of Dyersburg and Dyersburg Police Department Officers Mason "Joe" McDowell, Christopher Clemmons, Russell Burrows, and Sterling Wright. Defendants argue that Plaintiff Timothy C. Watson's lawsuit raises allegations concerning three distinct incidents that are inappropriate for joinder into one action. (See Defendants' Memorandum in Support of Their Motion to Sever at 4.) ("Defs' Memo")  Watson, proceeding pro se, filed a response in opposition on November 20, 2009. (See Plaintiff's Objections to Defendants' Motion to Sever, Dkt. No. 31.) ("Pl.'s Resp.")  For the following reasons, the Court DENIES the Defendants' Motion without prejudice to a

future motion to sever any trial under Federal Rule of Civil Procedure 42.

I.   BACKGROUND

Watson filed suit on October 15, 2008, alleging that Defendants violated his constitutional rights by arresting him without probable cause and using excessive force in violation of his rights under the Fourth Amendment of the Constitution. See 42 U.S.C. § 1983.[1] According to the Complaint, Watson attended a family birthday party held for a child on October 13, 2007. (Compl. at 3.)  Watson was delivering clothes, presumably as a gift for the child.  (Id.)  As Watson walked into the home's kitchen area, he alleges that Defendants McDowell and Wright approached him from behind and "jumped him," causing Watson to fall to the ground.  (Id.)  McDowell and Wright allegedly choked Watson as he fell into the bathroom and struck him repeatedly with their fists and knees.  (Id.)  Officer Clemmons then arrived at the home and came to assist McDowell and Wright. (Id.)  Wright placed his knee in Watson's back, forcing his body upward.  McDowell and Clemmons then began to strike Watson about the face while Wright added body blows.  (Id. at 4.)  At some point during this commotion, officers managed to handcuff Watson, who was then subjected to a "burst" of a chemical

---

[1] This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343.

2

substance in his face.[2]  (Id.)  Officers later transported Watson to the Dyersburg jail.

On October 19, 2007, officers drove Watson to and from state court for a hearing.  (Id.)  While officers walked Watson to the transport wagon, McDowell allegedly followed Watson outside.  Once Watson was secured inside the wagon, McDowell smiled at Watson, pointed his finger at Watson as though it were a handgun, and pulled the "trigger."  (Id.)  To Watson the inference was clear:  Watson had been shot five times in an earlier altercation.  McDowell's gesture appeared to signal that Watson was in danger of similar harm.  (Id.)

The final incident allegedly occurred several months later on February 20, 2008, when members of the Dyersburg Police Department once again arrested Watson.  (Id.)  After stopping the vehicle in which he was riding, officers threw Watson face down onto the ground in front of his three-year-old daughter. (Id.)  Defendant Burrows then placed his knee on the back of Plaintiff's neck.  Watson asserts that he quickly spread his arms and told the officer, "I'm not resisting."  (Id. at 4-5.) Nonetheless, Clemmons, who apparently was with Burrows, sprayed Watson in his mouth with a chemical agent.

---

[2] The Complaint refers to the chemical as "several burst[s] of freeze." (Compl. at 4.)

3

**II.  ANALYSIS**

Defendants' Motion argues that Watson has inappropriately joined what should be three separate legal actions into one. (Defs' Memo at 1.)  Because the three incidents involve three distinct factual scenarios, they argue, it is inappropriate and prejudicial to join them together for adjudication.  (Id. at 4-6.)  Plaintiff responds that he appropriately grouped all of his claims into one lawsuit because each of the Defendant officers is a member of the Dyersburg Drug Task Force, which he alleges wrongfully profiled and targeted him for harassment and arrest. (Pl.'s Resp. at 1-2.)

Federal Rule of Civil Procedure 20 governs the parties a plaintiff may join in an action.  It provides that:

> Persons . . . may be joined in one action as defendants if:
>
> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action

Fed. R. Civ. P. 20(a)(2).  Rule 20 promotes the dual values of trial convenience and efficiency by allowing the maximum number of related claims to be adjudicated contemporaneously.  See Mosley v. Gen. Motors Corp., 497 F.2d 1330, 1332 (8th Cir. 1974); Bridgeport Music, Inc. v. 11C Music, 202 F.R.D. 229, 231

(M.D. Tenn. 2001). Thus, the Supreme Court has held that Rule 20 allows for district courts to "entertain[] the broadest possible scope of action consistent with fairness to the parties." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966), superseded by statute on other grounds as stated in Itar-Tass Russian News Agency v. Russian Kurier, Inc., 140 F.3d 442, 446 (2d Cir. 1998) (noting that the factors for exercising supplemental jurisdiction are now controlled by 28 U.S.C. § 1367). Joinder of all related claims is "strongly encouraged." Gibbs, 383 U.S. at 724.

Rule 20, however, does not allow any and all claims against the same defendants to be joined. Interpreting the Rule, courts have fashioned a two-part test to determine when permissive joinder is appropriate. See Mosley, 497 F.2d at 1333; Bridgeport Music, 202 F.R.D. at 231. First, the right to relief against each Defendant must arise out of the same transaction or occurrence. See Fed. R. Civ. P. 20(a)(2)(A); Demboski v. CSX Transp., 157 F.R.D. 28, 29 (S.D. Miss. 1994). There is no bright-line rule for determining whether the events in question involve the same transaction; courts apply the test on a case-by-case basis. Mosley, 497 F.2d at 1333; Bridgeport Music, 202 F.R.D. at 231; Demboski, 157 F.R.D. at 29. The first prong prevents the joinder of "wholly unrelated" claims. See Michaels Bldg. Co. v. Ameritrust Co., 848 F.2d 674, 682 (6th Cir. 1988).

5

"[A]ll reasonably related claims for relief by or against different parties" may be joined.  Mosley, 497 F.2d at 1333.

Here, Watson alleges three incidents where members of the Dyersburg Drug Task Force allegedly targeted him for arrest and/or assault.  Two of Watson's claims involve incidents that occurred only six days apart in October 2007, during and shortly after Watson's October 13, 2007 arrest.  (See Compl. at 3-4.) The close temporal proximity and involvement of Officer McDowell in both incidents will implicate similar factual issues such that the two claims clearly involve one transaction or occurrence for purposes of Rule 20.

The more difficult issue is whether Watson's third claim, alleging that Officers Burrows and Clemmons used excessive force during the February 20, 2008 arrest, is part of the same transaction or occurrence.  (See Compl. at 4-5.)  The substantial time gap – four months – militates toward a finding that the third claim is not part of the same transaction or occurrence as the first two.  However, Watson's Complaint alleges that the Dyersburg Drug Task Force, of which all four officer Defendants were members, wrongfully targeted him for arrest and harassment.  (Id. at 3-5; Pl.'s Resp. at 1.)  This allegation links the alleged incidents, making them "reasonably related" and arguably part of the same transaction.  See Mosley, 497 F.2d at 1333.

Courts have interpreted the transaction requirement more leniently when there is an allegation of a common pattern of discrimination. See Demboski, 157 F.R.D. at 29-30 & n.1 (discussing this trend); see also United States v. Mississippi, 380 U.S. 128, 142-43 (1965) (viewing claims against six county voter registrars as part of the same transaction or occurrence rather than as "individual torts" when the federal government alleged a common pattern of discrimination in enforcing state voter registration laws); Mosley, 497 F.2d at 1333 (allowing ten plaintiffs to proceed with claims against General Motors together because they alleged their employer had "the same general policy of discrimination" on the basis of race and sex). At this early stage of the litigation and with an allegation that members of the Dyersburg Drug Task Force acted in concert with one another to deny Plaintiff his civil rights, the Court is reluctant to conclude that Plaintiff's allegations do not arise from the same transaction or occurrence. See Gibbs, 383 U.S. at 724 (noting that joinder is "strongly encouraged"). The Court, therefore, finds that Watson has met the first prong of Rule 20's test for permissive joinder.

The second requirement for joinder is that there must be some common question of law or fact. Fed. R. Civ. P. 20(a)(2)(B). The Rule does not require that all of the legal or factual issues be the same; a showing that some significant

7

legal or factual questions overlap is sufficient. See Fed. R. Civ. P. 20(a)(2)(B) (joinder allowed if "any question of law or fact [is] common" (emphasis added)); Mosley, 497 F.2d at 1334. Defendants admit that Plaintiff "can establish . . . commonality as to the legal theories arising from" the arrests. (Defs' Memo at 5.)  Indeed, allegations of false arrest and the use of excessive force form the basis for Plaintiff's entire Complaint. (See Compl. at 3-5.)  Watson, thus, has satisfied the requirements of Rule 20 and demonstrated that joinder is appropriate.

### III.  CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' Motion to Sever.  The Court, however, is aware of Defendants' suggestion that Officer Burrows may suffer prejudice if the case proceeds to trial and Plaintiff's claims against him are tried simultaneously with those against the other three officers.[3] (Defs' Memo at 6.)  Further development of the record must occur before the Court can determine whether that suggestion is well founded.  Thus, the Court's denial of Defendants' Motion is without prejudice to the filing of a subsequent motion to sever for trial, see Fed. R. Civ. P. 42(b), should Plaintiff's claims survive any future motions to dismiss or for summary judgment.

---

[3] Defendants argue that, because Plaintiff only accuses Burrows of involvement in the February 20, 2008, incident, he would be prejudiced if the jury considered Plaintiff's claims against him while also considering the incidents surrounding the October arrest.

So ordered this 12th day of April, 2010.

                                                s/ Samuel H. Mays, Jr.
                                                SAMUEL H. MAYS, JR.
                                                UNITED STATES DISTRICT JUDGE